UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JO LAYLA SHAKERDGE,<br>    Plaintiff,<br><br>v.<br><br>TRADITION FINANCIAL SERVICES, INC.,<br>TFS ENERGY LLC,<br>    Defendants. | No. 3:16-cv-01940 (VAB) |

**RULING ON DISCOVERY DISPUTES CONCERNING PRIVILEGED MATERIAL**

Jo Layla Shakerdge ("Plaintiff") filed this lawsuit alleging that her former employer, Tradition Financial Services, Inc. and TFS Energy, LLC (together, "TFS" or "Defendants"), discriminated against her on the basis of her gender and retaliated against her for filing a civil rights complaint. On August 18, 2017, the parties jointly requested a discovery conference to address several outstanding issues and objections regarding discovery. Joint Mot. for Discovery Conference, ECF 40 ("Joint Mot."). The Court held oral argument on September 19, 2017, Minute Entry, ECF No. 45, but did not resolve whether Ms. Shakerdge must comply with Defendants' request for information about any mental health care.

For the reasons stated below, Defendants' request is **GRANTED** with respect to the names of providers and dates of visits and **DENIED** as to other information sought.

I. **Factual and Procedural Background**

Defendants previously employed Shakerdge as an energy commodities broker. *See* Ruling on Defendants' Motion to Dismiss, ECF No. 46 at 1. She alleges that "crassness and bias . . . pervaded" the trading floor, and filed this lawsuit alleging that TFS discriminated against her

on the basis of her gender and in violation of both Title VII and the Connecticut Fair Employment Practices Act (CFEPA). Amend. Compl. at ¶ 114-120. She also alleges that TFS retaliated against her for engaging in protected activity under Title VII and CFEPA. *Id.* at ¶ 121-127. On September 26, 2017, the Court denied Defendants' motion for partial summary judgment. *See* Ruling on Defendants' Motion to Dismiss, ECF No. 46.

As part of the discovery process, Defendants submitted two interrogatories and two requests for production that are at issue here. The parties now request that the Court resolve a discovery dispute regarding provision of certain mental health records. *See* Joint Mot. at 1-2.

In Defendants' Interrogatory 4, TFS sought information about the name, address, and telephone number of "each and every doctor, psychiatrist, psychologist, social worker, counselor or other mental health care provider with whom you have treated in the past ten (10) years for any mental or emotional condition, or physical symptom related to a mental or emotional condition." Pl. Response to Defs. First Set of Interrogatories, Defs. Supplemental Br., Ex. A, ECF No. 43-1 at 3 ("Defs. Discovery Requests"). The interrogatory also requests that Plaintiff identify the purpose of each interaction, the physical location of the medical records and whether "any written report or memorandum was prepared relative to the consultation, examination and/or treatment." *Id.*

In Defendants' Interrogatory 5, TFS sought information about the name, address, and telephone number of "each and every expert, doctor, psychiatrist, psychologist, social worker or health care professional with whom you treated" for care "in connection with any emotional or physical distress. . . ." *Id.* at 4. Like Interrogatory 4, the interrogatory seeks information about the purpose of the visit or treatment, the physical location of the medical records, and whether any written report was produced as a result. *Id.*

Defendants also submitted two related requests for production. *See* Defs. Discovery Requests at 10 (detailing Defendants' Requests 37 and 38). First, Defendants sought production of "any and all documents substantiating, relating or referring to any treatment you have received from, or consultations you have had with any physicians, surgeons, therapists, nurses, psychiatrists, psychologists, counselors or anyone else, relating to any mental or emotional care you have received." *Id.* Additionally, Defendants requested that Plaintiff sign a "release for each of the doctor, psychiatrist, psychologist, social worker, counselor or other mental health care provider with whom you have treated or consulted as identified in Interrogatory Nos. 4 and 5 . . . ." *Id*.

Ms. Shakerdge objected to each of these requests, arguing that the information Defendants sought was protected by the federal psychotherapist-client privilege. The joint motion followed.

## II. Discussion

Defendants, in essence, seek two distinct types of information related to Plaintiff's mental health care: the names of health care providers and dates of visits, and information based on confidential communication between those providers and Ms. Shakerdge in the form of reports, the purposes of visits, and other records. Ms. Shakerdge raises two objections. First, she argues that the information is privileged and therefore exempt from disclosure. Second, she argues that, to the extent that detailing names of providers and the dates of visits is not shielded from disclosure, both are not relevant to her claim for garden variety damages.

The Court agrees with Ms. Shakerdge, in part. The law on privilege shields from disclosure confidential communications between mental health care providers and their clients,

and Ms. Shakerdge has not waived that privilege. The names of those providers, however, and dates of visits do not fall within the privilege and therefore must be disclosed.

A. **Communications With Providers Within The Psychotherapist Privilege**

Federal common law — which controls this case — recognizes that confidential communications between a party and a mental health professionals are privileged. *See Jaffee v. Redmond*, 518 U.S. 1 (1996) (recognizing the psychotherapist privilege and applying it to communications between defendant and a licensed social worker); *In re Sims*, 534 F.3d 117, 131 (2d Cir. 2008) (noting the broad reach of *Jaffee* and rejecting respondents' argument that protected communication should be disclosed if it addressed the plaintiff's state of mind and causation).

In *Jaffee*, the Supreme Court noted that, unlike other forms of health care, "effective psychotherapy . . . depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of fact, emotions, memories, and fears." *Id.* at 10. The Court protected those communications, rejecting any balancing test regarding invocation of the privilege: "Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege." *Id.* at 17. Like other testimonial privileges, the Court noted that the psychotherapist-patient privilege could be waived. *Id.* at 15 n. 14. But, in the absence of such a waiver, confidential communications were to be protected.

TFS does not address *Jaffee*'s broad protections for this type of information, instead characterizing their request as one for "medical treatment, dates of such treatment, and providers . . . ." Defs. Supplemental Br., ECF No. 43 at 2; they characterize Plaintiff as seeking to assert a

physician-patient privilege not recognized by federal law. *Id.* at 4. They seek, however, records related to "any mental or emotional condition, or physical symptom related to a mental or emotional condition," Defs. Discovery Requests at 3, and the purpose of visits to doctors, psychiatrists, psychologists, social workers specifically "in connection with any emotional or physical distress." *Id*. at 4. They also request that the plaintiff complete a records release form for each of the doctor, psychiatrist, psychologist, social worker, counselor or other mental health care provider." Defs. Discovery Requests at 10.

TFS's request is limited to mental health care, and communications between Ms. Shakerdge and providers of this mental and emotional care would be within the scope of the psychotherapist-patient privilege.[1] Therefore, the communications are protected from disclosure, unless Ms. Shakerdge has waived that privilege. She has not.

1. **At-Issue Waiver**

Like other categories of privilege, a plaintiff can waive the psychotherapist-patient privilege either explicitly or implicitly. Defendants argue that "to the extent a psychotherapist-

---

[1] At oral argument and in briefings, Defendants seemed to suggest that it only applied to a narrow category of providers. This argument misreads the privilege: it is the content of the communication that matters, and less about formal categorization of the treater doing the communication. Doctors, licensed social workers, psychiatrists, psychologists — the categories of treaters included in TFS's request — come within the boundaries of privilege if they are communicating about mental health care or mental health conditions. See *Jaffee*, 518 U.S. at 17 n. 16 (noting with approval that the "Judicial Conference Advisory Committee's proposed psychotherapist privilege defined psychotherapists as psychologists and medical doctors who provide mental health services."); *Finley v. Johnson Oil Co.*, 199 F.R.D. 301, 303 (S.D. Ind. 2001) ("Given Jaffee's express holding that the federal common law mental health records privilege encompasses communications made to "more readily accessible social workers," this court will conclude that communications to general practitioners at health clinics fall within the scope of the federal common law privilege."). *But see E.E.O.C. v. Nichols Gas & Oil, Inc.*, 256 F.R.D. 114 (W.D. N.Y. 2009) (declining to extend privilege to communications with medical providers who referred patient to mental health practioner or prescribed medication to treat depression or anxiety.)

patient privilege could apply to any of Plaintiff's medical records, it has been waived." Defs. Supplemental Br. at 5 (*citing Bagley v. Yale University*, No. 3:13-CV-1890 (CSH), 2016 WL 1531341, at *2 (D. Conn. Apr. 15, 2016)). Defendants appear to argue, by citing *Bagley*, that Ms. Shakerdge has implicitly waived the privilege by putting her mental state at issue.

Plaintiff argues that there has been no waiver: she seeks "only 'garden-variety' emotional distress damages; will not rely on medical testimony to establish her emotional distress damages; and does not claim damages for physical injuries." Pl. Supplemental Br., ECF No. 42 at 4. Therefore, Ms. Shakerdge argues that, under Second Circuit precedent, Defendants are not entitled to discovery of information protected by the psychotherapist-patient privilege. *Id.* (*citing Sims*, 534 F.3d at 117).

Courts in this Circuit agree that a plaintiff must seek more than a claim of a "garden variety injury" to waive the psychotherapist-patient privilege. *See Sims*, 534 F.3d at 117 (holding alleging "garden variety" injuries does not waive privilege); *MacCluskey v. Univ. of Connecticut Health Ctr.*, No. 3:13-CV-01408 MPS, 2014 WL 7404565, at *2 (D. Conn. Oct. 20, 2014) (holding that Title VII plaintiff did not waive privilege).

In *MacCluskey*, which Defendants cite, this Court noted that "[e]motional distress arising from discrimination—which is what MacCluskey is claiming—is, on its own, generally a garden variety form of emotional distress." *Id.* The plaintiff might have brought a tort action, for instance, which would have waived the privilege. But without it, "Courts that have used the garden variety standard to address claims for emotional distress related to discrimination, not accompanied by a tort action for infliction of emotional distress or claims of a specific mental disorder, have found that the psychotherapist-patient privilege is not waived by such claims." *Id.* (collecting cases).

The same reasoning applied in *Sims* and *MacCluskey* applies here. Ms. Shakerdge has not brought a tort action for emotional damages.[2] She represents that she is only seeking garden-variety damages of the sort that would be consistent with her allegations of sex discrimination and retaliation. Thus, she has not waived the privilege in this case.

### 2. Defendants' Alternative Arguments

Despite clear precedent, Defendants argue that they should have access to Plaintiff's records because those records "are likely sources of evidence relevant to [several] fundamental issues, and should be produced." Defs. Supplemental Br. at 4. Primarily, Defendants argue that they are entitled to discovery of these records because the information would be useful for addressing causation, that is, "whether any act of the Defendants caused the Plaintiff's alleged emotional distress" or whether there was some "other potential causes" *Id.* at 3.[3] Defendants also argue that they are entitled to this information because Plaintiff's hostile workplace claim requires a subjective element. Defs. Supplemental Br. at 4. Therefore, records "might reasonably show, for example, that Plaintiff was reporting — or not reporting —to her medical care provider that she was experiencing (or had experienced) hostility at work due to the allegedly sexual conduct" and that this hostility was sustained and not an isolated incident. *Id.*

---

[2] Defendants support their waiver proposition by citing *Bagley v. Yale University,* No. 3:13-CV-1890 (CSH), 2016 WL 1531341, at *2 (D. Conn. Apr. 15, 2016). The plaintiff in *Bagley*, however, had brought a much broader action, had testified about mental health care, and included claims for "specific and particularized claim[s] for emotional distress" not at issue in this case. *Id.*

[3] In supporting their claimed entitled to discovery based on causation, Defendants rely on two district court cases: *Bruno v. CSX Transportation*, 262 F.R.D. 131, 133 (N.D.N.Y. 2009) and *Cleveland v. International Paper Co.*, No. 96-CV-1068 (RSP/DNH), 1997 WL 309408, at *2 (N.D.N.Y. June 5, 1997). *Cleveland* predates the Second Circuit's decision in *Sims*, which clarified that merely seeking garden variety damages does not waive the privilege. In *Bruno*, the court found, unlike here, that Plaintiff had sought non-garden variety damages and therefore waived privilege.

Following Defendants' arguments to its logical conclusion would have startlingly broad implications. A plaintiff, seeking to vindicate his or her right to work in an environment free of harassment, would license a fishing expedition through the most intimate details of his or her life, regardless of whether the plaintiff put those details at issue. This would have precisely the chilling effect on client-provider communications the Supreme Court sought to guard against when it adopted the psychotherapist privilege in *Jaffee*. 518 U.S. at 18 ("We reject the balancing component of the privilege implemented by [the Court of Appeals.] Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege.") And Defendants' arguments are nearly identical to those rejected by the Second Circuit in *Sims*. *In Re Sims*, 534 F.3d at 141 ("In reality respondents simply seek to have the privilege breached whenever there is a possibility that the psychiatric records may be useful in testing the plaintiff's credibility or may have some other probative value. To accept these contentions would inject the balancing component that *Jaffee* foreclosed.")

Thus, to the extent that Defendants seek communications between Ms. Shakerdge and any mental health care provider — the purpose of an appointment, records of those appointments, reports, or similar documents — the Court holds that these are barred from disclosure under the psychotherapist-patient privilege.

**B.      Names and Dates of Treatment**

The names of providers and the dates of treatment of treatment present a different question. Defendants argue that this information is not protected by the psychotherapist-patient privilege, even if other information about those visits is shielded. Defs. Supplemental Br. at 4-5 Ms. Shakerdge raises a distinct concern regarding these records: that they are not relevant.

Without the content of the visits themselves and "[s]ince Shakerdge is not claiming more than garden-variety emotional distress, whether she saw a therapist for other reasons or at other times has no relevance to this matter." Pl. Supplemental Br. at 4. At oral argument, Plaintiff's counsel further refined this argument, noting that without the underlying records from each visit, the names of providers and the dates of visits would "encourage a jury or a fact-finder to speculate about the reasons that she was going." Transcript, ECF No. 48 at 27.

As a general matter, the names of providers and the dates of visits are not "communications" within the meaning of the psychotherapist-patient privilege. *See MacCluskey v. University of Connecticut Health Ctr.*, No. 3:13-cv-01408 (MPS), 2014 WL 7404565, at *2 (D. Conn. Oct. 20, 2014) ("While communications with psychotherapists are privileged, the dates of any psychotherapy and the names of providers are not protected by the privilege; the Health Center may request this information to the extent that it is reasonably calculated to lead to admissible evidence."); *accord Perry v. City of New Haven*, No. 3:11-cv-1485 (RNC), 2012 WL 3887061, at *2 (D. Conn. Sept. 6, 2012) ("The names, dates of treatment and diagnoses of medical providers who treated the plaintiff for emotional distress are relevant within the meaning of Rule 26(b)(1) to his damages claim of emotional distress."); *Torcasio v. New Canaan Bd. of Ed.*, No. 3:15-cv-00053(AWT), 2016 WL 299009, at *3 (D. Conn. Jan. 25, 2016) (same).

Therefore, Plaintiff must produce the requested records regarding names of providers and dates of visits, if any. The Court puts both parties on notice, however, that it will carefully review any use of this information at trial under Fed. R. Evid. 403, in order to determine whether its limited probative value is outweighed by any of the Rule 403 grounds, including misleading the jury.

Additionally, the Court notes that both parties are precluded from using the asserted privilege as both a sword and a shield. Plaintiffs "will be bound by her representations to the Court that she will not offer evidence regarding any mental or emotional disorders, severe emotional distress, or anything beyond the so-called 'garden variety' emotional distress that might result from discrimination." *MacCluskey*, 2014 WL 7404565, at *2. And Defendants will not be allowed to use Plaintiff's invocation of privilege to lead the trier of fact to speculate regarding the content of privileged communications between Ms. Shakerdge and any mental health care provider.

### III. Conclusion

Based on the considerations above, Plaintiffs are ordered to produce information regarding the names of providers and dates of visits to those providers responsive to Defendants' interrogatories. Defendants' request for disclosure of any other information related to the provision of mental health care is **DENIED**.

SO ORDERED at Bridgeport, Connecticut this 19th day of October, 2017.

/s/ Victor A. Bolden

VICTOR A. BOLDEN
UNITED STATES DISTRICT
JUDGE